# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

WILLIAM D. MORRIS,       )
                       )
      Movant,         )
                       )
v.                      )   Case No. CV408-078
                       )   [underlying CR406-124]
UNITED STATES OF AMERICA,   )
                       )
      Respondent.    )

## REPORT AND RECOMMENDATION

William Morris has moved to vacate, set aside, or correct his federal prison sentence under 28 U.S.C. § 2255. (Doc. 1.)[1] The government has responded in opposition to the motion. (Doc. 3.) For the following reasons, the motion should be **DENIED**.

## I. BACKGROUND

On April 12, 2006, a federal grand jury indicted Morris on eight counts of wire fraud, four counts of mail fraud, and seven counts of bank

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV408-078. "Cr. Doc." refers to documents filed under movant's criminal case, CR406-124.

fraud. (Cr. Doc. 1.) Morris was in the business of selling trailers to companies throughout the United States, and all of the charges arose from his business dealings. (Id.) Morris entered a negotiated plea of guilty to one count of mail fraud and one count of bank fraud, counts 1 and 19 of the indictment. (Cr. Docs. 36 & 44.) On November 7, 2006, Morris was sentenced to eighty-four months' imprisonment as to each count, to be served concurrently. (Cr. Doc. 45.) He was also sentenced to three years' supervised release under count 1 and five years' supervised release under count 19, to be served concurrently. (Id.) Finally, he was ordered to pay $970,937.06 in restitution. (Id.) Morris appealed on November 13, 2006. (Cr. Doc. 46.) On May 23, 2007, the Eleventh Circuit affirmed his conviction and sentence. United States v. Morris, 228 F. App'x 906 (11th Cir. 2007).

Morris is currently incarcerated at the Federal Correctional Institution in Estill, South Carolina. (Doc. 3 at 6.) His timely 28 U.S.C. § 2255 motion was filed on April 17, 2008, asserting several claims of ineffective assistance of counsel. (Doc. 1 at 11-12.) Morris asserts that

Frank Cardillo, his attorney at trial and on appeal, performed ineffectively by failing to:

(1)    challenge at sentencing and on direct appeal that the sentencing court abused its discretion by imposing a sentence that exceeded the advisory guideline range;

(2)    discuss the presentence investigation report ("PSI") with Morris until forty-five minutes before sentencing;

(3)    inform the Court and subpoena Darby Bank employees to prove that the bank made a wrongful deposit in his account and that Zesati, one of Morris' victims, bounced a $144,750 check owed to Morris;

(4)    inform the sentencing court that he was operating under a conflict of interest;

(5)    argue at sentencing and on appeal that Morris suffers from bipolar disorder;

(6)    enforce the plea agreement at sentencing and raise the breach of the plea agreement on appeal; and

(7)    object to the sentencing judge's bias.[2]

(Id.) The government responded in opposition to Morris' motion on May 21, 2008. (Doc. 4.)

---

[2] For the sake of clarity, the Court has reorganized Morris' grounds for relief, as several similar arguments were scattered throughout his brief.

## II.  ANALYSIS

Morris raises several grounds of ineffective assistance of counsel.[3] (Doc. 1.)  In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a movant received ineffective assistance of counsel.  First, movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  <u>Id.</u>  Second, movant must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted.  <u>Id.</u>

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.  <u>Id.</u> at 690.  The movant

---

[3] Though Morris alleges ineffective assistance of counsel, his primary dispute is with the sentencing judge's application of the sentencing guidelines in his case. Generally, attacks on the application of the sentencing guidelines are not cognizable under § 2255.  <u>Burke v. United States</u>, 152 F.3d 1329, 1332 (11th Cir. 1998); <u>Montemoino v. United States</u>, 68 F.3d 416, 417 (11th Cir. 1995); <u>United States v. Schlesinger</u>, 49 F.3d 483, 485 (9th Cir. 1994).  Similarly, upward departures from the sentencing range are not reviewable under § 2255.  <u>United States v. Faubion</u>, 19 F.3d 226, 232 (5th Cir. 1994).  Nevertheless, to the extent his grounds are framed as claims of ineffective assistance of counsel, the claims are cognizable under § 2255.  <u>Epps v. United States</u>, 2006 WL 3734177, at *3 (S.D. Ga. Dec. 15, 2006); <u>Rucker v. United States</u>, 2003 WL 244728, at *2 (D. Minn. Jan. 24, 2003).

carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

Under the prejudice prong, movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lightbourne v. Dugger, 829 F.2d 1012, 1022 (11th Cir. 1987); Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1983).

The Supreme Court has held that the same Strickland test applies to claims of ineffective assistance of appellate counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Murray, 477 U.S. 527, 535-36 (1986). In Jones v. Barnes, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every nonfrivolous issue. Effective appellate counsel should "'winnow out'

weaker arguments even though the weaker arguments may be meritorious." Id. at 751-52. Appellate counsel has no duty to assert every potentially colorable claim of error, even if his client urges him to do so, but instead should exercise his professional judgment and select only "the most promising issues for review." Id.

With these considerations in mind, the Court will now turn to Morris' asserted grounds for relief.

## A. Counsel's Failure to Challenge the Reasonableness of Morris' Sentence at Sentencing and on Direct Appeal

The sentencing judge, by means of a variance under 18 U.S.C. § 3553(a), sentenced Morris above the recommended sentencing guidelines range.[4] (Sent. Hr'g Tr. at 31.) Morris contends that his counsel was ineffective for failing to object to the variance at sentencing, but his

---

[4] Morris attempts to characterize his sentence as deriving from a five point sentencing enhancement based upon a "33% plus upward departure." (Doc. 3 at 5.) He contends that counsel was ineffective for failing to object to this upward departure. (Id.) The sentence enhancement, however, was not an upward departure; it was a variance. (Sent. Hr'g Tr. at 31.) After considering the factors listed in § 3553(a), a district court is permitted to sentence a defendant to a sentence outside the sentencing guidelines' recommended range. United States v. Eldick, 443 F.3d 783, 789-90 (11th Cir. 2006). As there was no upward departure in this case, counsel was under no duty to raise a meritless objection on that ground.

argument is belied by the record. (Doc. 1 at 14.) At sentencing, counsel stated: "Your Honor, we would take exception to the Court's going above the guidelines." (Sent. Hr'g Tr. at 34-35.) The sentencing judge noted but disregarded the objection. (Id.) Morris further contends that counsel failed to challenge the variance on direct appeal. (Doc. 1 at 4.) But once again, his contention is contrary to the record. Counsel did challenge the variance on appeal, and his challenge was rejected. Morris, 228 F. App'x at 908. The Eleventh Circuit explicitly held that Morris' "sentence of 84 months imprisonment, while outside of the advisory guideline range, is not outside of the range of reasonableness." Id. As counsel raised the variance at sentencing and on appeal, he cannot be said to have performed deficiently under Strickland's first prong, nor can Morris now argue that he was prejudiced by counsel's performance.

## B. Late Review of the PSI

Morris claims that he was only permitted forty-five minutes to review the PSI before he was sentenced, though counsel had the PSI for at least eight days before sentencing. (Doc. 3 at 3.) Consequently, he contends that

counsel was ineffective for failing to provide him access to the PSI before the morning of his sentencing.  (Id.)

"Under 18 U.S.C. § 3552(d) a defendant is entitled to ten days to review the PSI before the sentencing hearing, but the right is waivable." United States v. Smart, 218 F. App'x 836, 840 (11th Cir. 2007).  In Smart, the defendant argued that he only had eight days to review the PSI.  Id. The district court asked the defendant whether he had read the PSI and had an opportunity to review it with his attorney.  Id.  The defendant answered yes to both questions.  Id.  The defendant did not move for a continuance or otherwise object to the amount of time he had to review the PSI.  Id.  Based on these facts, the Eleventh Circuit held that the district court was entitled to presume that the defendant had waived any objection to the amount of time he had to review the PSI.  Id.

Here, the district judge asked virtually the exact same series of questions as those asked in Smart regarding Morris' review of the PSI:

THE COURT:     Did you receive a copy of the Presentence Report?

COUNSEL:        Yes, we did, Your Honor.

THE COURT:     Have you reviewed it with your client, Mr. Morris?

COUNSEL:      Yes, I have, Your Honor.

THE COURT:    Mr. Morris, have you read [the] report?

DEFENDANT:   Yes, sir, Your Honor.

(Sent. Hr'g Tr. at 4-5.)  Based upon that exchange, the Court was entitled to presume that Morris waived his right to early review under § 3552(d). As he waived his right to early review, any error made by counsel cannot give rise to the prejudice required under Strickland's second prong.[5] See Smart, 218 F. App'x at 840 (holding that it was not error for the district court to proceed with sentencing based upon the presumption that defendant had waived any objection to the amount of time he had to review the PSI); United States v. Navejar, 963 F.2d 732, 734-35 (5th Cir. 1992). Accordingly, this ground for relief should be denied.

## C.    Calculation of Loss Amounts

Morris contends that counsel was ineffective for failing to object to the loss amounts calculated by the probation office and relied upon by the sentencing judge regarding Darby Bank and Trust and Ricardo Zesati.

---

[5] In addition to the waiver, the Court further notes that Morris referenced the PSI by paragraph number during sentencing.  (Sent. Hr'g Tr. 18, 21.)  His thorough knowledge and discussion of the PSI at sentencing heavily undercuts any claim of prejudice from the late review.

(Doc. 3 at 4.) Additionally, Morris contends that counsel was ineffective for failing to object to the sentencing judge's improper consideration of the attempted suicide of one of Zesati's family members in determining his sentence.[6] (Id.)

Regarding the loss to Darby Bank, the facts are as follows. On May 27, 2004, at around 2:00 p.m., Darby Bank mistakenly deposited $392,700 into Morris' bank account.[7] (PSI 5 at ¶ 6.) The bank called Morris to ask him if he expected the money, and he stated that he did. (Id.) At approximately 4:00 p.m., the bank recognized its error and asked Morris to return the funds. (Id. at ¶¶ 6-7.) Incredibly, Morris had already spent $210,600 of the $392,700. (Id. at ¶ 7.) After removing the money from Morris' account, he was overdrawn by $181,000. (Id.) The bank gave him a ninety-day loan of $200,000 to repay the missing funds. (Id.) Morris made a single $10,000 payment, but the remainder of the loan went unpaid.

---

[6] As in almost every ground, Morris also spends a considerable amount of time arguing that the sentencing variance was unreasonable. (Doc. 3 at 4.) The Eleventh Circuit upheld the sentencing judge's upward variance. Morris, 228 F. App'x at 908. Consequently, Morris cannot attempt to relitigate that determination here. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000).

[7] The bank had received a refund request from Fleet Equipment LLC, but mistook Fleet's refund request as a transfer of $392,700 into Morris' account. (PSI 5 at ¶ 6.)

(Id.)  The PSI set the total intended loss from this conduct at $210,600,

which was the total Morris spent from  the money mistakenly deposited

into his account.  (PSI 5 at ¶ 7.)

Morris contends that because the deposit resulted from a bank error,

he should not have been held responsible for the loss at sentencing.[8]  (Doc.

3 at 3-4.)  Specifically, he argues that he received ineffective assistance of

counsel because counsel failed to offer testimony at trial that the money

was mistakenly deposited into his account.  (Id. at 4.)  The bank error,

however, was never in dispute and was wholly irrelevant to the question of

whether Morris intentionally used the money mistakenly deposited into his

account and subsequently refused to repay the bank's loan. (PSI 5 at ¶ 7.)

As the bank's error was not in dispute, counsel cannot be said to have

performed deficiently by failing to raise such a meritless objection.   Card

v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled

ineffective for failing to raise issues which have no merit.")

---

[8] Morris is advised that the bank's mistake does not excuse his sudden spending
spree.  When the bank called to ask whether he expected a $392,700 deposit, he
responded in the affirmative.  As a business owner, Morris was required to maintain
financial records; he should have been aware that the money did not belong to him.  At
best, Morris was merely mistaken as to whether the money belonged to him, but when
the bank made clear that the money was not his, he was under a duty to repay it.

Morris next argues that counsel should have objected to Zesati's losses. (Id. at 4.) Morris contends that Zesati sent him a check for $144,750, but the check "bounced." (Doc. 3 at 4 & Ex. C.) Since the check bounced, he argues that Zesati did not lose any money. (Id.) Looking to the PSI, however, the intended loss was calculated based upon a wire transfer, not upon a check. (PSI 6 at ¶ 15.) Morris helpfully included the original invoice for the transaction, and it reveals that Morris promised to sell Zesati thirty trailers for a total of $289,500. (Doc. 3 Ex. D.) Zesati initially paid $144,750 by wire transfer, covering one-half of the total invoice. (Id.) He then mailed a check to pay the remaining $144,750. (Id.) The check never cleared.[9] (Doc. 3 Ex. C.) Morris has attempted to mislead the Court into believing that the check was Zesati's sole payment; he entirely ignores the earlier wire transfer. (Doc. 3 at 4.) As the invoice explicitly states that Morris had received $144,750 by wire transfer from Zesati, counsel cannot be said to have performed deficiently under Strickland's first prong by

---

[9] It is unclear whether the transaction had been cancelled in full or if Zesati and Morris renegotiated the transaction for the sale of fifteen trailers, rather than the thirty in the original invoice. The PSI supports the latter interpretation, as it indicates that the ultimate transaction was for fifteen trailers, not thirty. (PSI 6 at ¶ 15.) Consequently, it appears that the deal was later renegotiated and a stop-payment order was issued on the check.

failing to object to the sentencing judge's reliance upon that figure at sentencing.[10]

_____

[10] In a separate section of Morris' brief, he reasserts this issue by contending that his restitution, and therefore the total loss to victims, should have been set at $305,371.06. (Doc. 3 at 8.) To the extent that he is challenging his counsel's failure to object to the amount of restitution set by the sentencing judge, his argument fails as a matter of law. United States v. Segler, 37 F.3d 1131, 1136-37 (5th Cir. 1994) (holding that a prisoner may not bring an ineffective assistance of counsel claim premised upon counsel's failure to object to a restitution order); see Cani v. United States, 331 F.3d 1210, 1214 (11th Cir. 2003) (holding that restitution calculations may not be advanced for the first time in a collateral proceeding); Kaminski v. United States, 339 F.3d 84, 88 (2d Cir. 2003) (following 1st, 5th, 7th, and 9th Circuits in finding that an order of restitution may not be attacked in a § 2255 motion even if the motion also challenges the sentence of imprisonment).

To the extent he raises this as a claim of ineffective assistance regarding the calculation of his recommended sentence under the guidelines, the claim still fails. Morris' number leaves out the losses to Darby and Zesati. (Doc. 3 at 8.) As explained above, however, the losses to the bank and Zesati were properly considered by the sentencing judge. Adding those losses to Morris' calculation of $305,371.06, results in a total loss of $660,121.06. The sentencing guidelines provide a base offense level enhancement of 14 for any loss over $400,000 but under $1,000,000. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1(b)(1)(H). As the amount of the loss still exceeds $400,000, Morris' recommended guidelines sentence would not change; he would still fall within the 14-level enhancement with his modified loss amount. Consequently, Morris cannot show prejudice under Strickland from counsel's failure to object to any miscalculation in the victim's losses, so any error is harmless. United States v. Tampas, 493 F.3d 1291, 1304-05 (11th Cir. 2007).

Morris also argues that there were fewer than ten victims, so there should not have been a 2-level increase under U.S.S.G. § 2B1.1(b)(2)(A). (Doc. 3 at 8.) He contends that Northwest and Zesati were not victims. (Id.) He blames them for their own plight. (Id. at 8-9.) As discussed above, Zesati sustained a loss, so he must be counted as a victim. Turning to Northwest, Morris provides no evidence supporting his allegation other than a letter that he wrote stating that he forwarded a deposit from Northwest to a third party who refused to return it. (Id. at Ex. M.) His letter affirms that Northwest sent him a deposit and he never repaid it. (Id.) As the letter is practically an admission of guilt, counsel's failure to object on this ground cannot conceivably be said to have been deficient performance.

Finally, Morris contends that the attempted suicide of Zesati's family member should not have been taken into account at sentencing. (<u>Id.</u> at 5.) Accordingly, he contends that counsel was ineffective for failing to object to the sentencing judge's reliance upon the attempted suicide in setting Morris' sentence. (<u>Id.</u>) The sentencing judge addressed the attempted suicide in the context of the sentencing variance pursuant to 18 U.S.C. § 3553(a). (Sent. Hr'g Tr. 13, 31.) A court may take into account the impact upon a victim when contemplating a variance from the sentencing guidelines under § 3553(a). <u>See, e.g.</u>, <u>United States v. Hunt</u>, 459 F.3d 1180, 1183-85 (11th Cir. 2006). Consequently, Morris cannot show that counsel performed deficiently by failing to raise such a meritless objection. <u>Card</u>, 911 F.2d at 1520.

### D.    Counsel Laboring under a Conflict of Interest

Morris contends that his attorney labored under a conflict of interest. (Doc. 3 at 5.) Morris states that he saved a man's life by thwarting a violent assault in February of 2006, and alleges that his attorney represented one of the perpetrators of that crime. (<u>Id.</u>; Doc. 5 at 3.) He argues that counsel

never brought the incident to the sentencing judge's attention and that his "conflict" rendered him ineffective. (Doc. 3 at 5.)

Morris states that after preventing the "attempted murder," he "went to hearings, identified the suspects for Police, met with the DA and did everything possible to help in the conviction of the men who attempted to kill another man." (Id.) Morris alleges that his counsel represented one of the attackers, but he provides no proof in support of his allegation. (Id.) Assuming that counsel did represent one of the attackers, Morris' argument is still meritless, as he has not demonstrated an actual conflict.

Claims of ineffective assistance of counsel based upon a conflict of interest are governed by Cuyler v. Sullivan, 446 U.S. 335 (1980). "To show ineffectiveness under Cuyler, a petitioner must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance." Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001) (citing Cuyler, 466 U.S. at 348-49). In order to establish an actual conflict, the movant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as

eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." <u>Smith v. White</u>, 815 F.2d 1401, 1404 (11th Cir. 1987).

Here, Morris has not made the requisite factual showing of inconsistent interests. Morris was charged with committing crimes entirely unrelated to the attack in which he allegedly intervened. He has not shown any reason why counsel could not have represented Morris' interests in this case without prejudicing the rights of either Morris or counsel's former clients. This is not a case where counsel would have to be concerned with "blame shifting" among co-defendants with inconsistent interests. <u>Reynolds</u>, 253 F.3d at 1344. Furthermore, Morris cannot show that the alleged conflict adversely affected counsel's performance. <u>Id.</u> at 1342. Counsel encouraged Morris to speak at the sentencing hearing, but Morris never mentioned his heroism. (Sent. Hr'g Tr. 26-29.) Morris' own failure to raise the issue when given the opportunity undercuts his assertion that counsel's supposed conflict adversely affected his performance. Consequently, this ground for relief should be denied.

### E. Counsel's Failure to raise Morris' Bipolar Disorder at Trial or on Appeal

Morris contends that counsel was ineffective for failing to argue at trial or on appeal that he suffered from bipolar disorder. (Doc. 3 at 5-6.) He argues that counsel was ineffective for failing to raise the issue, to call his psychiatrist and probation officer to testify regarding the diagnosis and medical history, and to seek a downward departure for diminished capacity based on the illness. (<u>Id.</u> at 7.)

Morris' first two arguments are entirely unsupportable, as counsel repeatedly pointed out that Morris' problems were, in part, attributable to his bipolar disorder and binge drinking. (Sent. Hr'g Tr. 9-10, 29; Rule 11 Hr'g Tr. 8, 10.) The probation office mentioned the disorder in the PSI. (PSI 16 at ¶¶ 67, 68.) And the sentencing judge was well aware of Morris' disorder by the time he handed down his sentence. (Sent. Hr'g Tr. 31.) Nevertheless, counsel never moved for a downward departure based upon the disorder.

The sentencing guidelines permit a downward departure in sentencing for diminished capacity. U.S.S.G. § 5K2.13. A downward departure may be warranted if the defendant suffered from a significantly reduced mental capacity and that reduced mental capacity contributed substantially to the

commission of the offense.  Id.  A "significantly reduced mental capacity"

means that the defendant "has a significantly impaired ability to (A)

understand the wrongfulness of the behavior comprising the offense or to

exercise the power of reason; or (B) control behavior that the defendant

knows is wrongful."  Id. cmt. n.1.  As Morris never alleges that his disorder

resulted in a significantly reduced mental capacity as defined by the

sentencing guidelines, Morris has not shown that he qualified for a

downward departure.  (Doc. 3 at 6-7.)  And even if his bipolar disorder

resulted in a significantly reduced mental capacity, the guidelines still

prohibit a court from granting a downward departure in certain

circumstances.

The guidelines state that a "court may not depart below the applicable

guidelines range if . . . the defendant's criminal history indicates a need to

incarcerate the defendant to protect the public."  U.S.S.G. § 5K2.13.  At

sentencing, the Court noted Morris' "long history of theft, check kiting,

ruined businesses, . . . and almost a million dollars in loss." (Sent. Hr'g Tr.

12.)  Morris was convicted of conspiracy and wire fraud in federal court in

1997.  (PSI 13 at ¶ 56.)  He received a below-the-guidelines sentence and

was released on November 5, 1999.  (Id.)  By 2003, he was back to his same old tricks.  Morris' criminal history supports a finding that incarceration would protect the public.

Additionally, the guidelines prohibit a defendant from seeking a diminished capacity downward departure when the reduction in capacity is "caused by the voluntary use of drugs or other intoxicants."  U.S.S.G. § 5K2.13.  Morris admits that he was a binge drinker with several DUI's on his record.  (PSI 16 at ¶ 68.)  He described himself as a person who drinks until he "passes out or the bar closes."  (Id.)

Instead of pursuing a questionable claim of diminished capacity, counsel moved for a downward departure on the ground that the PSI over-represented the seriousness of Morris' criminal history based, in part, upon Morris' history of mental health and alcohol problems.  (PSI Objections ¶ 2; Sent. Hr'g Tr. 10-11.)  The sentencing judge denied the motion.  (Id. at 12, 35.)  Furthermore, when arguing for the departure, counsel stated that Morris asked him not to present his mental health and alcohol problems as an excuse, and Morris does not contest this assertion.  (Sent. Hr'g Tr. 10.)  Clearly counsel did not perform deficiently by failing to pursue a claim of

diminished capacity when Morris specifically asked counsel not to present his mental impairment as an excuse. Morris has not overcome the presumption of effective assistance.

## F.    Counsel's Failure to Enforce the Plea Agreement

Morris contends that counsel failed to enforce his plea agreement with the government. (Doc. 3 at 7-9.) He contends that counsel should have argued that the government violated the plea agreement by ignoring its promises not to exceed the "$1,000,000 mark" in losses and not to charge Morris with Darby Bank's error (referencing the $372,900 mistakenly deposited into his account). (Id.) Both grounds are meritless, as they are contrary to the record.

The total calculated loss to victims was under $1,000,000, so Morris' argument that counsel was ineffective for failing to object to a loss in excess of $1,000,000 is groundless.[11]  (See Sent. Hr'g Tr. 32.)  Regarding Darby Bank's losses, the government did not charge Morris with the bank's error,

---

[11] The government did not promise not to exceed $1,000,000 in losses. It promised, instead, to "take no position at sentencing regarding whether the loss amount . . . [was] greater than $1,000,000.00." (Cr. Doc. 44 at 5.)

so Morris' argument is again contrary to the record.[12] (Cr. Doc. 1.) As noted above, counsel cannot be found to have performed ineffectively for failing to raise such meritless arguments. <u>Card</u>, 911 F.2d at 1520.

## G. Counsel's Failure to Object to Sentencing Judge's Bias and Corruption

Morris finally argues that it recently came to his attention that the sentencing judge is corrupt, because the judge allegedly lowered another defendant's sentence because he knew that defendant's grandfather.[13] (Doc. 5 at 1.) Morris contends that counsel was ineffective for failing to bring this bias to the attention of the Eleventh Circuit on appeal.[14] (<u>Id.</u>)

---

[12] To the extent Morris argues that he should not have been sentenced based upon the $210,00 loss to the bank discussed above, his argument is meritless. The bank's loss was properly considered by the sentencing judge, as it is very well established that "a district court may use extra-verdict enhancements . . . such as a drug quantity determination, to increase a defendant's base offense level" under the Sentencing Guidelines. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1301 (11th Cir. 2005). The fraud alleged against the bank is clearly an extra-verdict enhancement much like the drug quantity determination mentioned in <u>Rodriguez</u>. The sentencing judge was free to consider it, and the Eleventh Circuit upheld the sentencing judge's determination on appeal. <u>Morris</u>, 228 F. App'x at 908.

[13] In the interest of thoroughness, the Court reviewed the allegedly improper sentencing, which Morris asserts occurred in <u>United States v. Frawley</u>, No. CR606-022 (S.D. Ga. Apr. 19, 2007). The sentencing judge lowered Frawley's sentence because he waived his right to appeal, not because the judge knew Frawley's grandfather.

[14] Morris also argues that the sentencing judge impermissibly discriminated against him by increasing his sentence based on his above-average intelligence. (Doc. 3 at 1.) Aside from being entirely groundless and contrary to the record, the claim was never raised at trial or on appeal, and it is not presently raised as a claim of ineffective

But counsel cannot be said to have been ineffective for failing to raise an argument that Morris admits did not come to his own attention until well after his trial, sentencing, and appeal. (Doc. 7 at 1.) Accordingly, this claim is without merit and should be denied.

## III. CONCLUSION

Morris has failed to demonstrate that his counsel was ineffective. Accordingly, his § 2255 motion should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  11th  day of July, 2008.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

assistance of counsel. (Id.) Consequently, it is procedurally defaulted. Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004). Morris does not allege cause and prejudice or actual innocence excusing his default, so the claim should be denied. Id.