UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

**WILLIAM D. MORRIS**

v.                                  406CR124
                                    408CV078

**UNITED STATES**

## ORDER

In 2006, William D. Morris pleaded guilty to Counts 9 and 19 of Indictment 406CR124, and Count 1 of Information 406CR260. 406CR124, doc. # 45. He violated 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1344 (bank fraud). *Id.* at 1-2. Departing upwardly from the U.S. Sentencing Guidelines, the Court sentenced him to "84 months as to each count, to be served concurrently." *Id.* at 3.

Morris then unsuccessfully argued on appeal that this Court erred by not providing him with notice of its intent to exceed the applicable guideline; he also contended that his sentence is unreasonable. Doc. # 54. The Eleventh Circuit denied relief and concluded, in part:

> Considering that Morris caused multiple individuals to suffer almost one million dollars in losses, he had previously been convicted of multiple counts of wire fraud, and he was facing statutory maximums of thirty years imprisonment on the bank fraud count and twenty years apiece on the mail and wire fraud counts, we conclude that a sentence of 84 months imprisonment, while outside the advisory guideline range, is not outside the range of reasonableness.

*Id.* at 7.

Morris next filed a 28 U.S.C. § 2255 motion, which this Court denied. Doc. ## 59, 74. He now appeals that denial, along with this Court's Order and Judgment denying his various other motions. 408CV078, doc.# 1 (his first § 2255 motion); # 14 (Magistrate Judge's first Report and Recommendation (R&R), advising the undersigned to deny same); ## 20, 22, 24, 25, 27, 29, 30, 32, 33, 36 37, 39, 43, 44, 45, 46, 47 & 48 (Morris's various motions and filings challenging that R&R, moving for the undersigned's recusal, etc.); # 50 (second R&R advising Court to deny those motions); # 53 (Order adopting R&R); # 54 (Judgment denying motions ## 20, 22, 24, 25, 27, 29, 30, 32, 33, 36 37, 39, 43, 44, 45, 46, 47 & 48); # 61 (Notice of Appeal (NOA)).

Defendant also applies for a Certificate of Appealability (COA). Doc. # 63. Finally, he moves for leave to appeal *in forma pauperis* (IFP). Doc. # 72. That motion is reached under the pre-Prisoner Litigation Reform Act version of 28 U.S.C. § 1915. *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998).

To obtain a COA, Morris must show not only that one or more of the claims he has raised presents a substantial constitutional issue, but *also* that there is a substantial issue about the correctness of the procedural ground on which the § 2255 motion was denied. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A "substantial question" about a procedural ruling means that the correctness of it under the law as it now stands is debatable among jurists of reason. 28 U.S.C. § 2253(c)(2). *Gordon v. Sec'y Dep't of Corr.*, 479 F.3d 1299, 1300 (11th Cir. 2007). To qualify for IFP status, he need not show he will prevail on appeal, only "that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000).

Many of Morris's filings are largely the product of baseless "recusal gripes" and fanciful exaggerations (*i.e.*, he literally references a judicial assistant who retired long

before he first appeared before this Court, doc. # 123 at 2 ("Donna Bouchillon")). They thus are not worth repeating here.

But there is one point that merits discussion. Morris had been in the business of selling trailers and trucks to companies throughout the United States, and all of the charges arose from his business dealings. Doc. # 14 at 1-2; # 23 at 13-20; Presentence Investigation Report (PSI)[1] at 4. Morris grounded his § 2255 motion on ineffective assistance of trial and appellate counsel (IAC). Doc. # 14 at 2-3. He claimed his lawyer performed ineffectively by failing to:

> (1) challenge at sentencing and on direct appeal that the sentencing court abused its discretion by imposing a sentence that exceeded the U.S. Sentencing Guidelines' advisory guideline range;
>
> (2) discuss the presentence investigation report ("PSI") with Morris until forty-five minutes before sentencing;
>
> (3) inform the Court and subpoena Darby Bank employees to prove that the bank made a wrongful deposit in his account and that Zesati, one of Morris' victims, bounced a $144,750 check owed to Morris;
>
> (4) inform the sentencing court that [the undersigned] was operating under a conflict of interest;
>
> (5) argue at sentencing and on appeal that Morris suffers from bipolar disorder;
>
> (6) enforce the plea agreement at sentencing and raise the breach of the plea agreement on appeal; and
>
> (7) object to the sentencing judge's bias.

*Id.* at 3. The R&R meticulously explained why these claims are without merit. *Id.* at 4-14.

To reiterate, Morris may not now simply reargue the same grounds already addressed in the R&R, as adopted by the Court. Instead, he must meet the above-recited COA/IFP standards by showing not only that the Court erred, but did so prejudicially within the meaning of F.R.Civ.P. 61. On top of that, he must show that his appellate issues could be supposed to have some arguable merit.

He has not. For example, he challenged the Court's calculation of the loss suffered by his victims on which his sentence was based. The R&R reached Morris's contention that his lawyer was ineffective for failing to object to the loss amounts calculated by the probation office and relied upon by the sentencing judge regarding Darby Bank and Trust[2] and Ricardo Zesati. The R&R focused on Morris's argument

> that counsel should have objected to Zesati's losses. (*Id.* at 4.) Morris contends that Zesati sent him a check for $144,750, but the check "bounced." (Doc. 3 at 4 & Ex. C.) Since the check bounced, he argues that Zesati did not

---

[1] This is not filed in the record of this case but instead is kept on file in the Court's Probation Office. Morris and his counsel were provided a copy before sentencing.

[2] As the R&R explained, the bank mistakenly deposited $392,700 into Morris' bank account, then called him on it, only to find that he had already spent $210,600 of it. The bank then made him a 90-day, $200,000 loan to repay the missing funds, but Morris defaulted after a single $10,000 payment. Doc. # 14 at 10. This Court rejected Morris's claim that, because the deposit resulted from a bank error, he should not have been held responsible for the loss at sentencing. *Id.* at 11.

2

lose any money. (Id.) Looking to the PSI, however, the intended loss was calculated based upon a wire transfer, not upon a check. (PSI 6 at ¶ 15.) Morris helpfully included the original invoice for the transaction, and it reveals that Morris promised to sell Zesati thirty trailers for a total of $289,500. (Doc. 3 Ex. D.) Zesati initially paid $144,750 by wire transfer, covering one-half of the total invoice. (Id.) He then mailed a check to pay the remaining $144,750. (Id.) The check never cleared. (Doc. 3 Ex. C.) Morris has attempted to mislead the Court into believing that the check was Zesati's sole payment; he entirely ignores the earlier wire transfer. (Doc. 3 at 4.) As the invoice explicitly states that Morris had received $144,750 by wire transfer from Zesati, counsel cannot be said to have performed deficiently....

Doc. # 14 at 12 (footnote omitted).

In his COA Morris states that the R&R at 12, ¶ 9 is flawed. The R&R concedes, says Morris, that it is

> *unclear* whether the transaction had been cancelled in full or if Zesati and Morris renegotiated the transaction for the sale of fifteen trailers, rather than the thirty in the original invoice. The PSI supports the latter interpretation, as it indicates that the ultimate transaction was for fifteen trailers, not thirty. (PSI 6 at ¶ 15). Consequently, it appears that the deal was later renegotiated and a stop payment order was issued or, the check.

Doc. # 63 at 11 (Morris's COA accurately quoting the R&R at doc. # 14 at 12 n. 9, but adding emphasis). Morris then insists that he "provided the signed contract, the original invoice, proof that Zesati bounced a check to Morris for $144,750.00...." *Id.* He then concludes the R&R at best

> was unclear about the matters regarding Zesati. [And the prosecution] did not object to the R&R and the findings regarding Zesati. This one matter will clear Norris of $144,750.00 in restitution, reduce his points level by 2 points, and reduce Petitioner's guideline range to 43-51 months. Petitioner's rights have been violated through DUE PROCESS and Petitioner's right to freedom has been violated.

*Id.* at 12. Morris conspicuously ignores the rest of the R&R's reasoning, however:

> To the extent he raises this as a claim of ineffective assistance regarding the calculation of his recommended sentence under the guidelines, the claim still fails. Morris' number leaves out the losses to *Darby* [Bank] and Zesati. (Doc. 3 at 8.) As explained above, however, the losses to the bank and Zesati were properly considered by the sentencing judge. Adding those losses to Morris' calculation of $305,371.06, results in a total loss of $660,121.06. The sentencing guidelines provide a base offense level enhancement of 14 for any loss over $400,000 but under $1,000,000. U.S. Sentencing Guidelines Manual ("U.S. S.G.") § 2B1.1(b)(1)(H). As the amount of the loss still exceeds $400,000, Morris' recommended guidelines sentence would not change; he would still fall within the 14-level enhancement with his modified loss amount. Consequently, Morris cannot show prejudice ... from [his] counsel's failure to object to any miscalculation in the victim's losses, so

any error is harmless. *United States v. Tampas*, 493 F.3d 1291, 1304-05 (11th Cir. 2007).

Doc. # 14 at 13 n. 10. The PSI, for that matter, concludes that Morris is responsible for $995,128.56 in total losses attributable to his relevant conduct. PSI at 9 ¶ 24. So even backing out the *entire* Zesati transaction does not alter the over-$400,000-based sentencing result.

The Court is aware of the fact that, at sentencing, Morris provided an elaborate explanation for his misconduct. He insisted that he had been cheated by others and thus his business came crashing down like a house of cards -- and so there was no criminal intent to defraud at the level the Government alleged. 406CR124, doc. # 53 at 17-21. The Court inquired of its investigating Probation Officer:

> THE COURT: Now, you've heard Mr. Morris' explanation. He said that deal went bad, and it resulted in a house of card that were not very solid, and were falling apart.
>
> USPO HIGHSMITH: Yes, sir.
>
> THE COURT: Is that true?
>
> USPO HIGHSMITH: Your Honor, Mr. Morris has had this explanation throughout. And as I said throughout to Mr. Morris and his attorney, if this had happened one time, I could accept that explanation. But this conduct went on, and on, and on. There was not just one company involved with -- there were several companies involved.
>
> THE COURT: Yes. I've gone through those.
>
> USPO HIGHSMITH: Each one of these companies, none of these companies told me this situation. They're all in the belief that they were duped by Mr.Morris. And there are 20 lawsuits filed by several companies against Mr. Morris. Mr. Morris has filed counter suits against them.
>
> THE COURT: Well, there is never going to be any money coming out of Mr.Morris.
>
> USPO HIGHSMITH: So, this is a mess.
>
> THE COURT: It is just a loss of money.

*Id.* at 23.

The Court also found the prosecutor's interpretation convincing:

> The only thing that I thought that was pertinent of what Mr. Morris said was that he didn't have capital to cover some of the jobs. So what he was doing was robbing Peter to pay Paul. That is what this case was about. I mean, you know, deals fell through, and he had to pay them off. So he misrepresented himself to other folks so that he could pay those other folks off. I mean, that is what this case is about.

*Id.* at 24.

Morris's counsel was not ineffective,[3] and

---

[3] IAC claims are evaluated under an objective standard. At bottom, then, Morris must establish that no competent counsel would have taken the action that his counsel did take -- that "the course of action taken by counsel would not have been taken by *any* competent counsel." *Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir. 2008) (emphasis added). He has failed to do so here.

4

he fails to show that his issues on appeal meet the aforementioned, IFP/COA standards. Accordingly, the Court *DENIES* William D. Morris's IFP/COA motion, 408CV078, doc. # 63, as well as all other pending motions.

This _4_ day of November, 2008.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA